IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| ROBBIE NEWBY, #21051078 | § | |
| VS. | § | CIVIL ACTION NO. 6:15cv131 |
| UNITED STATES OF AMERICA | § | |

<u>MEMORANDUM OPINION ADOPTING REPORT AND
RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE</u>

Movant Robbie Newby, an inmate confined at the United States Penitentiary in Marion, Illinois, brings this motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255. This Court ordered that the matter be referred to the United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

**I. Background**

Newby is in federal custody pursuant to a conviction for the offense of sexual exploitation of children, in violation of 18 U.S.C. § 2251(a) and (e). According to Newby's final Presentence Investigative Report (PSR), prepared on March 13, 2014, Newby was originally arrested in state court in June 2012 on related charges, particularly on charges concerning the aggravated sexual assault of a minor. He was placed into federal custody in April 2013.

The PSR denotes that Newby's base offense level was 32 under U.S.S.G. § 2G2.1(a). Because the offense involved sexual conduct and material that portrayed sadistic of masochistic conduct, his offense level was increased by six points. Moreover, as Newby was in the custody and care of the victim when he committed the offense, his offense was increased by two additional points—giving him an offense level of 40. Newby's offense level of 40, coupled with an offense

level of 42 for a second count of sexual exploitation of children—which was later dropped via the plea agreement—and a three-point decrease for his acceptance of responsibility, yielded a combined total offense level of 41.

His total offense level of 41, coupled with a criminal history category of III, generated a sentence of 360 months' imprisonment. Pursuant to a binding plea agreement—in which Newby agreed "not to contest the conviction, sentence, fine, and/or order of restitution or forfeiture in any postconviction proceeding, including, but not limited to a proceeding under 28 U.S.C. § 2255"—he was sentenced to the maximum sentence, thirty years' imprisonment, with supervised release for life.

Crucially, in exchange for entering the plea, the State agreed to dismiss several related charges. During Newby's plea hearing, defense counsel explained further about that agreement:

> DEFENSE COUNSEL: We understand that no federal judge can bind State authority, it's just not lawful to do so, so what we try to do in cases that are related to State prosecution is we act along with the State defense counsel and we negotiate a disposition of state matters.
>
> DEFENSE COUNSEL: Toward that end, Mr. Newby is entering a plea of guilty to what is the statutory maximum in this case under 11(c)(1)(C). The reason he has done that is he has received written assurances from [Anderson] County's District Attorney's office that they're going to dismiss the pending indictment against him following the conclusion of his being found guilty by this Court. It will happen before sentencing.
>
> DEFENSE COUNSEL: I want the Court to know, as any Judge would want to know, how it is a lawyer can stand before the Court and ask for the statutory maximum pursuant to 11(c)(1)(C), but there is a story behind that story. It is in his best interest. I've discussed the fact that this is the statutory maximum with Mr. Newby, but the reality is he has received assurances from the State prosecution in the form of a letter that the Government has received, and we actually have a copy of that. I want to be clear on the record that those things are going to happen.

When the Court then asked Newby if, after hearing defense counsel's explanation, whether those were the terms of his plea agreement with the Government, Newby responded in the affirmative.

Moreover, at sentencing, defense counsel provided more details about the plea agreement resting on assurances from State prosecutors:

> DEFENSE COUNSEL: This case began in the state system. There were related offenses. There was a relationship that developed between the defendant and the victims that was inappropriate and improper, and a wrong thing happened. And they charged him in the state system.
>
> DEFENSE COUNSEL: The Federal Government adopted the prosecution with the permission of Anderson County; and the parties, including the District Attorney in Anderson County, met with myself and the prosecutors in this case and agreed that the best disposition—our goal was to save the victims from testifying. Our goal was to save a trial, if one could be saved. And Mr. Newby did everything he knew how to do to prevent that from happening. And the result was a statutory maximum in lieu of state prosecution [,] which would have meted out much more severe punishment, at least by title.

The court formally entered the judgment on April 25, 2014. Newby did not file a direct appeal, but filed this motion in February 2015, and the Government filed a response in June 2015.

**II. Factual Background**

According to the PSR, in June 2012, Anderson County Sheriff Department deputies were dispatched to a home in Grapeland, Texas, involving a claim of sexual assault. The first complainant, named Minor Victim #1, was seventeen years old when she contacted deputies and explained that her mother began dating Newby in February 2012. After a few weeks of dating, the mother and her four children, which includes both victims, moved in with Newby. The mother was subsequently arrested for fraud, and Newby became the sole caretaker for all the children.

Minor Victim #1 explained that Newby became both verbally and physically abusive toward her, as he eventually forced her to have sex with him on numerous occasions. She stated that she was sixteen years old when the sexual assaults began. Furthermore, she claimed that Newby forced her to do drugs and that she only engaged in sexual acts with him because she was frightened. She also explained that Newby began sexually assaulting her younger sister, who was twelve years old and named Minor Victim #2. Authorities received a cellular telephone containing

3

videos of Newby engaging in oral sex and sexual intercourse with Minor Victim #2 as well as a tablet containing videos of sexual acts between Newby and Minor Victim #1.

**III. Newby's Federal Claims**

In his underlying motion, Newby argued that his guilty plea was involuntary for a variety of reasons. Specifically, he maintained that (1) counsel failed to inform him of the consequences of entering a guilty plea; (2) counsel failed to take the intent element into account when advising Newby to enter a plea; (3) the court failed to determine whether he understood the charge; and (4) his plea was obtained by the threat of further state charges. In response, the Government insisted that Newby's plea was both knowing and voluntary, and that his claims were refuted by the record.

After a review of the pleadings and the trial records, the Magistrate Judge issued a Report, (Dkt. #31), recommending that Newby's motion be dismissed with prejudice. Newby has filed timely objections, (Dkt. #34).

**IV. Legal Standard**

*A. Federal Habeas Corpus Proceedings*

First and foremost, it must be noted that a section 2255 is "fundamentally different from a direct appeal." *United States v. Drobny*, 955 F.2d 990, 994 (5th Cir. 1992). Section 2255 "provides relief for a petitioner who can establish that either (1) his sentence was imposed in violation of the Constitution or laws of the United States, (2) the sentencing court was without jurisdiction to impose the sentence, (3) the sentence was in excess of the maximum authorized by law, or (4) the sentence is subject to collateral attack." *U.S. v. Seyfert*, 67 F.3d 544, 546 (5th Cir. 1999) (citing *United States v. Faubion*, 19 F.3d 226, 232 (5th Cir. 1994)).

In other words, cognizable claims within a section 2255 motion are narrow; the movant may not present a generalized, broad attack challenging the legality of his conviction and,

4

importantly, non-constitutional claims that could have been raised on direct appeal, but were not, may not be asserted in section 2255 proceedings—absent a showing of cause for the procedural default and actual prejudice ensuing from the error. *United States v. Shaid*, 936 F.2d 228, 232 (5th Cir. 1991); *see also Villasenor-Cruz v. United States*, 2017 WL 6627045 (E.D.Tex.—Sherman, Oct. 3, 2017) (same).

*B. Guilty Pleas*

Because Newby pleaded guilty, the starting point in analyzing his claims begins with his plea. The plea agreement, which Newby signed, contained the following provision:

> Except as otherwise provided herein, the defendant expressly waives the right to appeal the conviction, sentence, fine and/or order of restitution or forfeiture in this case on all grounds. The defendant further agrees not to contest the conviction, sentence, fine and/or order of restitution or forfeiture in any post-conviction proceeding, including, but not limited to a proceeding under 28 U.S.C. § 2255.

The Fifth Circuit has held than an ineffective assistance claim will survive an appeal waiver where the alleged ineffectiveness directly affects the validity of the waiver or of the plea itself. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002) ("We also note that a defendant may always avoid a waiver on the limited grounds that the waiver of appeal itself was tainted by the ineffective assistance of counsel."). Here, all of Newby's underlying claims related to his plea and attack its validity. Consequently, Newby's claims were not barred by his appeal waiver.

Nevertheless, a guilty plea will be upheld on habeas review if the plea was entered into knowingly, voluntarily, and intelligently. *United States v. Hernandez*, 234 F.3d 252, 254 (5th Cir. 2000). Whether a plea is knowing turns on whether the defendant understood the consequences of his plea; the defendant must have a full understanding of "what the plea connotes and of its consequences." *Id*. at 255. A defendant need only understand the direct consequences of the plea, and need not be made aware of every consequence that—absent the guilty plea—would not

otherwise occur. *Id*. The consequences of a guilty plea, with respect to sentencing, means that the defendant must know the maximum prison term and the fine for the charged offense. *See United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996).

With respect to voluntariness, the question becomes whether the plea was induced by threats or improper promises. *Id*.; *see also U.S. v. Nunez,* 539 Fed.App'x 502, 503 (5th Cir. 2013) ("Whether a plea is knowing looks to whether the defendant understands the direct consequences of his plea, while voluntariness looks to, inter alia, whether the plea was induced by threats or improper promises.").

Firm declarations in open court, including a plea colloquy, carry a strong presumption of verity. *See United States v. Perez,* 690 Fed.App'x 191, 192 (5th Cir. 2017) (Mem.) ("A defendant's solemn declarations in open court carry a strong presumption of truth.") (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). As a result, the petitioner faces the heavy burden of proving that he is entitled to relief through overcoming the evidence of his own sworn words. *DeVille v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994); *see also United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986) (holding that there must be independent indicia of the likely merit of the petitioner's contentions; mere contradiction of the statements made at the guilty plea proceeding will not suffice); *cf. United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (to be entitled to an evidentiary hearing on a claim that sworn statements made during the guilty plea proceeding were false, the petitioner must make "specific factual allegations supported by the affidavit of a reliable third witness.").

Importantly, as the Report indicates, a plea is not rendered involuntary simply by the threat of other charges. *See United States v. Prince*, 868 F.2d 1379, 1385 (5th Cir. 1989). In other words, simply because a defendant may have been afraid of receiving a lengthier sentence does not mean

6

that a guilty plea was coerced. *See Jones v. Estelle*, 584 F.2d 687, 690 (5th Cir. 1978); *see also Brady v. United States*, 397 U.S. 742, 749-55 (1970) ("[A] plea of guilty is not invalid merely because [it was] entered to avoid the possibility of the death penalty."); *Garner v. Scott*, 59 F.3d 1242, 1995 WL 413125 at *1 (5th Cir. 1995) ("Moreover, a plea is not involuntary solely because a defendant pleads guilty to limit his possible penalty.").

## V. Newby's Objections, Discussion, and Analysis

A review of Newby's objections show his attempt to differentiate between objections to facts and legal theories.

### A. Factual Objections

Newby objects to a significant portion of the Report's articulation of the factual background concerning the offense, which was and currently is transcribed directly from the PSR found in his underlying federal criminal case, case number 6:13-cr-00035. Specifically, he now contends that (1) the mother of the victims never lived with him; (2) he did not force Minor Victim #2 to have sex with him because of her "true feelings for him"; (3) the tablet did not contain sexual videos between him and Minor Victim #1; (4) the material confiscated by authorities did not portray sadistic or masochistic conduct; (5) the State did not dismiss several charges; (6) Minor Victim #2 was not twelve years old when he knew her; (7) he was, indeed, "surprised" by the imposition of lifetime supervision, which was not stipulated throughout the entire process; (8) the single referral in the Report to "Jones" was not correct; (9) his claim of an involuntary plea was not "dubious"; and (10) various objections regarding the 67-count State indictment remain.

However, there are several problems with these factual objections. First and foremost, other than any claims concerning ineffective assistance of counsel implicating the voluntary and knowing nature of Newby's guilty plea, Newby has waived his other section 2255 claims—

7

including any claims or objections to the facts of his crimes. A knowing and voluntary guilty plea precludes all claims of constitutional deprivations—other than jurisdictional defects—occurring prior to the entry of the plea. *See U.S. v. Daughenbaugh*, 549 F.3d 1010, 1012 (5th Cir. 2008); *see also Flores-Zarate v. United States*, 2017 WL 5930307 (W.D.Tex.—El Paso, Nov. 30, 2017).

Second, Newby raises these issues for the first time on objection, which renders these issues not properly before the Court. *See Rayford v. Stephens*, 622 Fed.App'x 315, 333 (5th Cir. 2015) ("Ordinarily, failure to assert a claim until objections to a magistrate judge's findings and recommendations waives that claim because such a claim was 'not properly before the district court.'") (internal citation omitted); *U.S. v. Armstrong*, 951 F.2d 626, 630 (5th Cir. 1992) ("Instead, Armstrong first argued these issues in his objections to the magistrate judge's findings, conclusions, and recommendations. These issues were not properly before the district court, therefore this court will not address them.").

To the extent that he maintains that the Magistrate Judge incorrectly outlined the facts, as mentioned above and in the Report, the recitation of the facts were transcribed directly from the PSR. Accordingly, any objection to those facts should have been raised during his plea hearing, before he signed the factual resume admitting to the facts, or at any time before he entered his guilty plea.

With respect to Newby's objection regarding "Jones," the Court notes that the use of the name "Jones" within the Report, contained in the portion denying Newby a certificate of appealability, was simply an inadvertent clerical error and is of no consequence to Newby's case.

*B. Objections Related to his the Voluntariness of his Guilty Plea*

As mentioned, in his section 2255 motion, Newby argued that his plea was involuntary because (1) counsel failed to inform him of the consequences of entering a guilty plea; (2) counsel

8

failed to take the intent element into account when he advised Newby to enter a plea; (3) the Court failed to determine whether he understood the charge; and (4) his plea was obtained by the threat of further state charges.

### 1. Consequences of Pleading Guilty and Understanding the Charges

With respect to Newby's claim regarding counsel's purported failure to advise him of the consequences of entering a guilty plea and the Court's purported failure to determine whether he understood the charges, the Magistrate Judge found that the transcript of Newby's plea hearing conclusively refuted his claims. Specifically, the Magistrate Judge highlighted a portion of the plea transcript illustrating how the Court thoroughly explained the range of punishment for his charged offense, to which Newby responded that he understood. The Magistrate Judge found that Newby failed to overcome the evidence of his sworn words, which are entitled to a strong presumption of verity.

On objection, Newby now contends that "his plea of guilty was not an admission that he had used, or coerced, or enticed a minor to engage in sexually explicit conduct for the purpose of creating a visual depiction. Movant was admitting that he had sex with the minor, but was only aware of the photos/videos AFTER the fact." He specifically takes issue with the Magistrate Judge's reliance on the strong presumption of verity regarding guilty pleas. The Magistrate Judge correctly found that the record refutes Newby's claims. As an initial matter, Newby's claim regarding his lack of knowledge of the photographs or videos was raised in his initial section 2255 motion and addressed in the Magistrate's Report.

As the Magistrate Judge correctly outlined, it is well-settled that firm declarations in open court, typically words sworn-to under oath, including words articulated by a defendant during a plea colloquy, carry a strong presumption of truthfulness. *See Blackledge*, 431 U.S. at 74; *U.S. v.*

*Diaz*, 516 Fed.App'x 358, 361-62 (5th Cir. 2013) ("A defendant ordinarily may not refute testimony given under oath at a plea hearing.").

To that end, the Fifth Circuit has repeatedly held that the constitutional requirement—that a defendant understand the consequences of pleading guilty—is limited only to ensuring that the defendant "know[s] the maximum prison term and fine for the offense charged." *See United States v. Scott*, 857 F.3d 241, 245 (5th Cir. 2017) ("If the defendant is aware of the potential maximum prison term and fine for the offense charged, but nevertheless pleads guilty, his plea is knowingly and intelligently entered."); *see also Guerra*, 94 F.3d at 995 ("As long as Guerra 'understood the length of time he might possibly receive, he was fully aware of his plea's consequence.'") (citing *United v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990)).

Consequently, then, as the Report indicates, Newby's sworn affirmations during his plea hearing—that he (1) fully discussed the charges against him with his attorney, (2) understood the charge and the elements of the offense, (3) understood the complete range of punishment, and (4) desired to plead guilty—are entitled to a strong presumption of verity. His affirmations, under oath, demonstrate that he understood his charges and the consequences of his plea. Newby's subsequent frustration with his own words is of no consequence to the validity of his guilty plea. His objection on this point is therefore meritless.

### 2. Intent

Turning to his claim regarding counsel's purported failure to consider the element of intent when advising Newby to plead guilty, the Magistrate Judge found that counsel was not ineffective and that the record refuted his claim. Specifically, the Magistrate Judge explained that the Government thoroughly explained the elements of the charged offense during the plea hearing. The Government highlighted the element of intent—stating that the second element requires that

the "defendant acted with purpose of producing visual depiction of sexual explicit conduct." Moreover, when the Court explicitly asked Newby whether he then understood each of the elements, Newby responded in the affirmative.

On objection, Newby basically asserts that his affirmative responses to the Court's questions at the plea hearing should not be given much weight. Specifically, he contends that he has "stated he felt he understood the elements as counsel had explained—which was that Movant's knowledge of the photos and videos AFTER the fact was sufficient to satisfy the 'intent' elements." Newby continues to insist that he would have proceeded to trial had counsel properly explained the law.

As an initial matter, as the Report explained, a defendant asserting that counsel was ineffective must demonstrate both deficient performance and ensuing prejudice. *Strickland .v Washington*, 466 U.S. 668 (1984). In the context of a plea, Newby must show that, but for counsel's alleged deficient performance, he would have proceeded to trial. *See U.S. v. Rodriguez*, 616 Fed.App'x 153, 154 (Mem.) (5th Cir. 2016).

Here, as the Magistrate Judge properly found, Newby cannot demonstrate prejudice. The record illustrates that the Government and the court discussed the elements of the charged offense, including intent. Moreover, Newby signed his factual resume, which specifically highlights the intent element and was signed before the plea hearing:

1. On or about March 14, 2012, in the Eastern District of Texas, I knowingly used, persuaded, induced, enticed, or coerced a minor, [], to engage in sexually explicit conduct.
2. I intentionally engaged in the sexual conduct of which visual images were knowingly made, which I know that under the law satisfies the purpose requirement of the statute.

(Factual Resume, ECF TXED 6:13-cr-35, docket number 28, pg. 1).

Because a defendant's sworn testimony at a plea hearing is entitled to a presumption of truthfulness, Newby's claim fails. He explained that he understood the elements the charge during the plea hearing and even signed the factual resume that outlined the element of intent. Newby's mere contradiction of his own sworn assertions are insufficient to overcome his sworn testimony. *See Raetzsch*, 781 F.2d at 1152 (mere contradiction of sworn statements at the plea hearing does not suffice). Additionally, Newby cannot demonstrate that he would have proceeded to trial absent counsel's purported failure because, as explained more thoroughly below, Newby agreed to enter his plea with assurances from the State that it would not prosecute him for charges that undoubtedly would have resulted in a lengthier sentence—if convicted.

### 3. Coercion and the Threat of State Charges

As mentioned, Newby claimed that his guilty plea was a product of coercion, as he was threatened by future state criminal charges. In his motion, he explained that counsel showed him the State's 67-count proposed indictment against him for related charges. Newby maintained that if he did not sign the federal plea agreement, he would have faced imprisonment for "thousands of years."

The Magistrate Judge found that (1) the record refuted any claim of coercion; (2) simply because a defendant may feel threatened by additional charges does not render a guilty plea involuntary; and (3) Newby's claim was dubious based on the terms of his plea agreement. On objection, Newby insists that he was never charged with the State offense of aggravated sexual assault of a child and that the State indictment against him was excessive and ridiculous. Moreover, he argues that he did not receive the "benefit" of a plea bargain because he is actually innocent. A review of Newby's objections demonstrate his frustration with the Magistrate Judge's

12

analysis of his federal plea bargain—maintaining that the Magistrate Judge relied on various "assumptions" concerning his bargain with the State.

The Magistrate correctly and properly analyzed these claims. First and foremost, it is true that a defendant's guilty plea is neither involuntary because it was entered to avoid a lengthier sentence nor by the threat of future or further charges. *See Jones v. Estelle*, 584 F.2d 687, 690 (5th Cir. 1978); *see also Brady v. United States*, 397 U.S. 742, 749-55 (1970) ("[A] plea of guilty is not invalid merely because [it was] entered to avoid the possibility of the death penalty."); *Garner v. Scott*, 59 F.3d 1242, 1995 WL 413125 at *1 (5th Cir. 1995) ("Moreover, a plea is not involuntary solely because a defendant pleads guilty to limit his possible penalty.").

Moreover, as mentioned above, a review of Newby's plea hearing, sentencing hearing, PSR, and factual resume show that he received the benefit of a favorable plea bargain. The PSR denoted that Newby was originally placed in state custody on charges related to the aggravated sexual assault of a minor. A Texas defendant who is convicted of aggravated sexual assault of a minor has committed a first-degree felony, punishable by a term of imprisonment not more than 99 years or less than five years on each count; the penalty is increased to a **minimum** of twenty-five years' imprisonment if the child is less than fourteen years of age and the defendant commits the aggravated sexual assault while providing the child with an impairing substance. *See* Tex. Penal Code § 22.021 (2014) (emphasis added). Accordingly, the PSR demonstrates that if Newby proceeded in state court, he could have faced a much lengthier sentence than the maximum of thirty years' imprisonment on one count in federal court—particularly given the fact that the PSR denotes that he forced at least one of the minor victims to use drugs and frightened her.

Additionally, as Newby mentioned in his section 2255 motion that he faced a 67-count state indictment on related charges, it stands to reason that some of those 67 counts could have

13

been for the offense of aggravated sexual assault of a minor—thereby potentially exposing him to multiple convictions that carried a potential sentence of five to 99 years' imprisonment each. Defense counsel even alluded to this potential exposure in open court when he explained the plea agreement: "And the result was a statutory maximum in lieu of state prosecution [,] which would have meted out much more severe punishment, at least by title." Consequently, both defense counsel and Newby acknowledged that he faced significant penalties in state court absent the federal plea agreement.

To the extent that he now insists that the indictment was "phony" or fabricated, the Court notes that Newby was the one who originally mentioned the 67-count indictment in his section 2255 motion. Further, Newby's claim regarding how he was "coerced" into pleading guilty as a result of state charges gives even more credence to the existence of the 67-count state indictment. Any claim regarding the accuracy of the PSR is suspect through Newby's sworn affirmation that he had no objections to the PSR. *See United States v. Crain*, 877 F.3d 637 (5th Cir. 2017) ("Solemn declarations in open court carry a strong presumption of verity, and constitute a formidable barrier in any subsequent collateral proceedings.") (internal citation and quotations omitted).

Moreover, as defense counsel thoroughly explained to the Court during the plea hearing, Newby was entering a guilty plea to the maximum penalty in federal court to avoid state charges. Defense counsel explained that he and the State met to discuss Newby's case, and both agreed that the best disposition was to avoid a trial. The State agreed to forgo state charges in lieu of Newby's guilty plea for thirty years' imprisonment. As a result, Newby was sentenced to thirty years' imprisonment, rather than the "thousands of years" he noted that he faced absent the federal plea agreement.

Given how Newby now readily admits that he engaged in the sexual acts, it is unclear how he did not receive the benefit of a plea bargain when he faced a much more severe punishment in state court. Perhaps even more damaging his general claim about his "involuntary" plea, immediately after defense counsel provided the lengthy explanation of the terms and negotiation process of Newby's plea agreement during sentencing, when the Court asked him if there was anything he would like to add, Newby replied: "Your Honor, Mr. Hawk pretty much covered everything. I couldn't add anything new to what he said—what he said I basically was going to say to some degree. And I can't add anything to what he said. He hit the nail on the head, to say the least." Accordingly, Newby essentially admitted, in open court, that defense counsel's articulation of the plea negotiation process—how the State agreed to forgo prosecution in lieu of his plea—was true and correct. His current attempt to hide behind his plea and his sworn testimony is belied by the record. Therefore, all of Newby's claims regarding coercion, threats, and the "involuntariness" of his plea are, indeed, dubious. The Magistrate Judge correctly reasoned that Newby cannot demonstrate that he would have proceeded to trial or would not have entered his guilty plea absent counsel's purported failures. Newby's objections are meritless.

### 4. Lifetime Supervision

Newby originally contended that he was only to serve five years' supervised release. The Magistrate Judge found that his claim was belied by the record because the written plea agreement, the plea colloquy, and his PSR revealed that he would serve lifetime supervision. On objection, Newby takes issue with the Magistrate Judge's finding that lifetime supervision was the stipulation throughout the entire process and insists that he was "surprised" by the announcement of lifetime supervision. He directs the Court to the one of his transcripts, which allegedly shows a "pause and confer" in the proceeding when lifetime supervision was announced.

15

The Magistrate Judge correctly found that lifetime supervision was contemplated throughout Newby's entire case. There is nothing in the trial record, whatsoever, indicating that five-years' supervision was ever considered. A review of both Newby's plea hearing transcript and sentencing hearing transcript show that no "pause and confer" occurred after lifetime supervision was pronounced. While the plea transcript demonstrates one point in which Newby asked the Court if he could ask a question—at which point he conferred with defense counsel and defense counsel then informed the Court that they cleared up an issue—it is not clear what the "issue" was that required him to confer, but it did not occur immediately after the pronouncement of lifetime supervision. Rather, he conferred with counsel after the Government outlined each and every paragraph within the plea agreement Newby signed. Accordingly, because lifetime supervision was part of the agreement all along, Newby's objection on this point is meritless.

## VI. Conclusion

Ultimately, a review of the Magistrate Judge's Report, the record in Newby's criminal case, his motion, and his objections demonstrate that his claims regarding the involuntary nature of his plea are an attempt to hide behind his various sworn testimony. Nothing in the record suggests that his guilty plea was involuntary.

The Court has conducted a careful *de novo* review of those portions of the Magistrate Judge's proposed findings and recommendations to which the Movant objected. *See* 28 U.S.C. §636(b)(1) (District Judge shall "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."). Upon such *de novo* review, the Court has determined that the Report of the United States Magistrate Judge is correct and the Movant's objections are without merit. Accordingly, it is

**ORDERED** that Movant Newby's objections, (Dkt. #34), are overruled and the Report of the Magistrate Judge, (Dkt. #31), is **ADOPTED** as the opinion of the District Court. Furthermore, it is

**ORDERED** that the above-styled motion to vacate, set aside, or correct his federal sentence is **DISMISSED WITH PREJUDICE**. Finally, it is

**ORDERED** that any and all motions which may be pending in this action are hereby **DENIED**.

**So Ordered and Signed**
**Jan 24, 2018**

_____
Ron Clark, United States District Judge